E-FILED
Wednesday, 22 July, 2026  11:42:54 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

JANE DOE,

     *Plaintiff,*

v.

INTERNATIONAL STUDENT
EXCHANGE, INC.; ANGELA REEDY;
and JAMIE LE DONNE,

     *Defendants.*

Case No. 1:26-cv-01106-MMM-RLH

## ORDER & OPINION

The federal policy in favor of arbitration is so widely accepted that it hardly needs citation. *See Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012); 9 U.S.C. §§ 1–402 (Federal Arbitration Act). But "what Congress gives it can take away."[1] And it has exercised that power by expressly withdrawing some disputes from the otherwise broad policy favoring arbitration. *See, e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112 (2001). This is one such dispute. Enacted in 2022, the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (EFAA) allows victims of sexual assault to forego arbitration and litigate in a judicial forum. *See* 9 U.S.C. § 402(a). Plaintiff Jane Doe's complaint places this case squarely within the EFAA's text, so her choice to pursue relief in this Court must be honored. Defendants' motion to compel arbitration will be denied.

---

[1] Paul R. Verkuil, *Separation of Powers, the Rule of Law and the Idea of Independence*, 30 Wm. & Mary L. Rev. 301, 318 (1989).

The facts of this case are undeniably tragic. Plaintiff Jane Doe is an Italian citizen who chose to pursue a high-school education in the United States. (Doc. 1 at 1, 10.) To that end, she entered a foreign exchange program called the "Secondary School Visitor Exchange Program." (Doc. 1 at 4.) Defendant International Student Exchange, Inc. (ISE) is a non-profit corporation and sponsor of the program. (Doc. 1 at 18.) Among other things, ISE recruits host families and appoints coordinators to oversee students during their studies abroad. (Doc. 1 at 4.) As a condition of entry, ISE asks prospective exchange students—like Doe—to sign a "Program Agreement." (Docs. 1 at 3; 13 at 3.) The agreement contains an arbitration clause: "Any dispute concerning, relating, or referring to" the exchange program is to be "resolved exclusively" in arbitration. (Doc. 13 at 4.)

Doe's complaint alleges the following. Soon after settling in with her host family in the United States, the father, Gary Leato, began to touch, hug, fondle, grope, and kiss Doe—all without her consent. (Doc. 1 at 11.) And in December 2023, he raped her. (Doc. 1 at 12.) After informing her ISE coordinators, they flouted their obligations to report the rape and advised her to confront her attacker personally. (Doc. 1 at 12.) Ultimately, ISE removed Doe from the home and placed her with another family in Indiana. (Doc 1 at 12.) Even so, Leato continued to contact her. (Doc. 1 at 12.) When Doe informed her new host family about the rape, they promptly contacted local law enforcement. (Doc. 1 at 13.) Leato was later charged with—and pleaded guilty to—felony sexual assault of a minor. (Doc. 1 at 13.)

Doe filed this suit in March 2026 against ISE and two of its coordinators: Angela Reedy and Jamie Le Donne. (Doc. 1.) In short, she asserts that Defendants negligently failed to screen the host family before placing Doe in their care. (Doc. 1 at 16.) She also asserts that ISE failed to adequately train its employees on how to properly handle reports of sexual misconduct.

Defendants move to compel arbitration. They invoke the arbitration clause in the agreement Doe and her family signed when she entered the program. That clause's broad language, to be sure, covers this dispute—a fact Doe apparently does not contest. (*See generally* Doc. 23.) Assuming the agreement is valid, the Federal Arbitration Act would usually require this Court to enforce its terms. *See* 9 U.S.C. § 2; *see also A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) (explaining that the FAA demands an enforceable arbitration agreement, a dispute within its scope, and a refusal to arbitrate). But not here. Regardless whether the agreement is valid, the EFAA allows Doe to disaffirm it and proceed in court.

The Court's inquiry begins and ends with the EFAA's text.[2] *See United States v. Marcotte*, 835 F.3d 652, 656 (7th Cir. 2016) ("When a statute is unambiguous, our inquiry 'starts and stops' with the text."). "At the election of the person alleging conduct constituting a . . . sexual assault dispute," the EFAA provides, "no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute."

---

[2] The EFAA also specifically confers the power to decide issues of arbitrability to courts "irrespective of whether the agreement purports to delegate such determinations to an arbitrator." 9 U.S.C. § 402(b). The parties seem to agree on this point. (*See* Doc. 13 at 10; Doc. 23 at 2.)

3

9 U.S.C. § 402(a). A "sexual assault dispute," in turn, "means a dispute involving a nonconsensual sexual act or sexual contact." *Id.* § 401(4). Put simply, when a plaintiff asserts claims related to nonconsensual sexual contact, she may elect to forego an arbitration agreement otherwise applicable to those claims.

That is exactly what Doe has done. She alleges that Gary Leato—the father of her host family—perpetrated nonconsensual sexual acts against her. (*See* Doc. 1 at 11.) And she asserts state-law negligence claims against Defendants for allowing the incident to happen—or, at least, for failing to implement measures to prevent it. (*See* Doc. 1 at 13–23.) The dispute thus "involve[es] a nonconsensual sexual act or sexual contact." 9 U.S.C. § 401(4). It was "filed under . . . State law." *Id.* § 402(a). And it undeniably "relates to" the sexual assault because Doe's injury—and, in turn, her negligence claims—arise from the assault. *See Chevron USA Inc. v. Plaquemines Parish, La.*, 146 S. Ct. 1052, 1060 (2026) ("The phrase 'relating to' sweeps broadly. It means 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association or connection with.'" (quoting *Morales v. Trans World Airlines*, 504 U.S. 364, 383 (1992))).[3]

Defendants make several arguments why the EFAA does not apply here. None are persuasive.

First, they suggest that "Congress intended the EFAA to address employment and consumer situations." (Doc. 13 at 10.) They cite President Biden's signing

---

[3] As Doe observes, where the EFAA applies, it applies "to the entire case"—not "to merely the claims in the case that pertain to the alleged sexual" assault. *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 540 (S.D.N.Y. 2023). Here it makes no difference, because all Doe's claims relate to the assault.

remarks, where he announced that the EFAA's passage marked "a momentous day for justice and fairness in the workplace." (Doc. 13 at 10.) And they cite statements from various lawmakers describing the EFAA as a positive change to "employment law." (Doc. 13 at 10.) "But legislative history is not the law." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018) The best—and indeed, the only reliable—evidence of congressional intent is the text Congress enacted. *Cf. CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). The EFAA's text does not cabin its reach to particular fields of law. It says nothing about employment law, consumer law, or any other kind of law. Instead, it speaks broadly to all cases "filed under Federal, Tribal, or State law." 9 U.S.C. 9 U.S.C. § 402(a). And the only disputes it addresses are those involving sexual assault or sexual harassment. *See id.* In the context of those disputes—regardless of how, where, or under what law they arise—"*no* predispute arbitration agreement . . . shall be valid or enforceable." *Id.* (emphasis added). Had Congress wished to limit the EFAA to employment or consumer contracts, it would have said so. But it did not. *See Azar v. Allina Health Servs.*, 587 U.S. 566, 579–80 (2019) (refusing to "allow 'ambiguous legislative history to muddy clear statutory language.'" (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011))).

Second, Defendants observe that "the vast majority of cases invoking the EFAA relate to employment relationships." (Doc. 13 at 12.) Maybe so. The vast majority of arbitration agreements probably appear in the employment context. So most courtroom battles over arbitrability take place during the course of employment litigation. But it does not follow that the EFAA *only applies* to employment disputes.

5

Also inapposite are Defendants' citations to courts who have said in passing that the EFAA "applies to plaintiffs alleging claims of or related to workplace sexual harassment." (Doc. 13 at 12 (quoting *Hodgin v. Intensive Care Consortium, Inc.*, 666 F. Supp. 3d 1326, 1329 (S.D. Fla. 2023)). *See also Lee v. Bath Manor Ltd. P'ship*, No. 111756, 2023 WL 2534122, at *3 n.3 (Oh. App. Ct. Mar. 16, 2023) (Keough, J., concurring) ("[The EFAA] effectively bans employers from forcing workers into arbitration to resolve sexual assault and harassment complaints in the workplace."). Those courts did not purport to exhaust the circumstances in which the EFAA may apply. Nor does saying that the EFAA applies to workplace harassment the same as saying it *does not apply* to harassment in other contexts.

Third and finally, Defendants say the EFAA does not apply to sexual assault disputes in which the alleged perpetrator was not the defendant's agent or employee. To their credit, some courts have endorsed that view. In *M.D. v. Verizon Communications, Inc.*, for instance, the plaintiff was stalked and harassed by a man who obtained her information by issuing a phony search warrant to Verizon. No. 5:24-cv-474, 2025 WL 2712831, at *1 (E.D.N.C. Sep. 23, 2025). She sued Verizon for negligent infliction of emotional distress, and Verizon moved to compel arbitration. *See id.* The court found that the plaintiff had "alleg[ed] conduct that constitutes sexual harassment" and that the dispute thus "relat[ed] to a sexual harassment dispute" under the EFAA. *Id.* at *2. It nonetheless concluded, "based on Congressional intent," that "the EFAA should not apply." *Id.* In that court's view, the principal concern underlying the EFAA was the "obscuring of sexual harassment

6

misconduct by companies." *Id.* And in addressing that concern, Congress did not want the EFAA to apply where the perpetrator of the assault was not "an employee of the company that sold services to the consumer." *Id.*

The court in *Farnham v. Grindr, LLC* followed suit. No. 8:25-cv-1260, 2025 WL 3062698 (M.D. Fla. Nov. 3, 2025). That case "stem[med] from the brutal torture and murder" of a sixteen-year-old girl at the hands of a man she had met on Grindr, a dating application. *Id.* at *1. Her estate sued Grindr, who moved to compel arbitration. *Id.* Citing *M.D. v. Verizon*, the court reasoned that "the EFAA 'was primarily intended to preclude arbitration in employment disputes.'" *Id.* at 2 (citing *Verizon*, 2025 WL 2712831, at *2.). Because the perpetrators of the assault had "no legal relationship to Grindr," the court concluded, the case was "not one intended to fall within the scope of the EFAA." *Id.*

This Court respectfully disagrees. Both *Farnham* and *Verizon* rewrote clear statutory text based on what they believed to be Congress's intent. In their view, Congress was primarily concerned with employer-employee arbitration agreements, so the EFAA "should not" apply where the defendant has no legal relationship to the perpetrator of the assault. *Verizon*, 2025 WL 2712831, at *2. But "the text of a law controls over purported legislative intentions unmoored from any statutory text." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022). As both courts recognized— and indeed, *Verizon* stated explicitly—the disputes in those cases "related to" a sexual assault or sexual harassment under the EFAA. 2025 WL 2712831, at *2. The EFAA's text therefore allowed the plaintiffs in those cases to proceed in a judicial forum.

7

So too here. Asking whether Congress would have wanted the EFAA to apply would be futile, for the remarks of select lawmakers do not represent the intent of the collective body. *See Appalachian Power Co. v. Sadler*, 314 F. Supp. 2d 639, 641 (S.D.W. Va. 2004) (describing the exercise as a "quest for an amorphous prey, since a collective legislative intent is seldom identifiable in any case"). And in any event, limiting the EFAA's reach by resort to legislative history would exceed this Court's mandate to apply the law as written. *See Castro-Huerta*, 597 U.S. at 642 (forbidding courts from "replac[ing] the actual text with speculation as to Congress' intent" and instructing them to "presume more modestly that the legislature says what it means and means what it says" (citations and quotations omitted)). The EFAA says that Doe's arbitration agreement with ISE is void here. So the Court presumes that is what Congress intended.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendants' Motion to Compel Arbitration, (Doc. 12) is DENIED. Defendants must file an answer or other responsive pleading to Doe's Complaint on or by August 5, 2026.

*So ordered.*

Entered this 22nd day of July 2026.

s/ Ronald L. Hanna
Ronald L. Hanna
United States Magistrate Judge